XAVIER BECERRA
Attorney General of California
SARAH E. MORRISON
Supervising Deputy Attorney General
GEORGE TORGUN, State Bar No. 222085
TATIANA K. GAUR, State Bar No. 246227
Deputy Attorneys General
  300 South Spring Street, Suite 1702
  Los Angeles, CA  90013
  Telephone:  (213) 269-6329
  Fax:  (213) 897-2802
  E-mail:  Tatiana.Gaur@doj.ca.gov

*Attorneys for Plaintiff State of California*

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **STATE OF CALIFORNIA,** by and through **XAVIER BECERRA, ATTORNEY GENERAL,**<br><br>Plaintiff,<br><br>v.<br><br>**ANDREW R. WHEELER,** as Administrator of the United States Environmental Protection Agency, **UNITED STATES ENVIRONMENTAL PROTECTION AGENCY,**<br><br>Defendants. | Case No:  3:19-cv-05943<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Administrative Procedure Act, 5 U.S.C. § 551 *et seq.*) |

**INTRODUCTION**

1.     Plaintiff State of California, by and through Xavier Becerra, Attorney General ("Plaintiff") brings this action to seek review pursuant to the Administrative Procedure Act, 5 U.S.C. § 551 *et seq.* ("APA") of the United States Environmental Protection Agency's ("EPA") March 1, 2019 determination finding that the Redwood City Salt Ponds site, a 1,365-acre area adjacent to San Francisco Bay and consisting of tidal channels and impoundments of bay waters

(hereinafter, "Salt Ponds Site" or "the Site"), does not include "waters of the United States" under the Clean Water Act, 33 U.S.C. § 1251 *et seq.* ("CWA" or "Act"). The jurisdictional determination was requested by DMB Redwood City Saltworks, as part of a proposal for an urban development of the Salt Ponds Site.

2.      The effect of EPA's March 1, 2019 action, referred to as a "Jurisdictional Determination" for CWA purposes, is to exempt future development of the Salt Ponds Site from the requirement to obtain dredge and fill permits under Section 404 of the Act, 33 U.S.C. § 1344. Consequently, the Site, which is one of the few remaining areas in San Francisco Bay that is suitable for wetlands restoration, can be developed without the crucial protections afforded by the CWA, including Section 404 dredge and fill permitting provisions and Section 401 state water quality certification requirements.

3.      The Jurisdictional Determination is a reversal of EPA's preliminary decision issued on November 21, 2016 ("Preliminary Determination"), which concluded that the Salt Ponds Site includes 1,270 acres that are "waters of the United States" because: (1) the tidal channels within the Site are part of the traditionally navigable waters of San Francisco Bay and were not converted to "fast land," or dry solid upland, prior to the enactment of the CWA; (2) the salt ponds on the Site in their current condition have been shown to be navigable in fact and susceptible to use in interstate or foreign commerce; (3) the salt ponds are impoundments of the San Francisco Bay, which is a "water of the United States"; and (4) the salts ponds have a significant nexus to the traditionally navigable waters of the adjacent San Francisco Bay. The Preliminary Determination was supported by an extensive analysis based on the CWA, the regulatory definition of "waters of the United States," applicable case law and the comprehensive factual evidence showing the Site contains "waters of the United States". EPA did not finalize the Preliminary Determination before the change in federal administration in 2017.

4.      The Jurisdictional Determination contradicts the CWA and relevant case law and ignores the regulatory definition of "waters of the United States," codified in EPA's *Clean Water Rule: Definition of "Waters of the United States,"* 80 Fed. Reg. 37,054 (June 29, 2015)

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

(hereinafter, the "Clean Water Rule"),[1] to reach the erroneous conclusion that the Site was converted into "fast land" prior to the enactment of the CWA and, as such, does not include "waters of the United States." Further, EPA ignores the factual evidence and conclusions in its Preliminary Determination issued two years earlier and fails to provide a reasoned explanation for the Jurisdictional Determination.  EPA discounts the evidence that the Salt Ponds Site contains waters that are navigable in fact or susceptible for use in interstate or foreign commerce with reasonable improvements, remains connected to San Francisco Bay, and the water in the ponds is seawater from the Bay. As a result, the Jurisdictional Determination is not supported by substantial evidence on the record.

5.  Accordingly, Plaintiff seeks a declaration that the Jurisdictional Determination is not in accordance with law, arbitrary and capricious, and unsupported by substantial evidence, and violates the APA, and requests that the Court set aside and vacate the Jurisdictional Determination for the Salt Ponds Site.

### JURISDICTION AND VENUE

6.  This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 (action arising under the laws of the United States) and 5 U.S.C. § 702 (providing for judicial review of agency action under the APA). An actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a), and this Court may grant declaratory relief, injunctive relief, and other relief pursuant to 28 U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 705–706.

7.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(e)(1)(C), because this is the judicial district in which Plaintiff State of California resides, and this action seeks relief against federal agencies and officials acting in their official capacities.

///

///

///

---

[1] At the time the Jurisdictional Determination was issued, the Clean Water Rule was in effect in 22 states, including California.  https://www.epa.gov/wotus-rule/definition-waters-united-states-rule-status-and-litigation-update (last visited August 26, 2019).

## INTRADISTRICT ASSIGNMENT

8.      Pursuant to Civil Local Rules 3-5(b) and 3-2(c), this case should be assigned to either the San Francisco Division or the Oakland Division of this Court because the Salt Ponds Site is located in San Mateo County.

## PARTIES

9.      Plaintiff STATE OF CALIFORNIA brings this action by and through Attorney General Xavier Becerra. The Attorney General is the chief law enforcement officer of the State and has the authority to file civil actions in order to protect public rights and interests, including actions to protect the natural resources of the State. Cal. Const., art. V, § 13; Cal. Gov. Code §§ 12600-12612. This challenge is brought pursuant to the Attorney General's independent constitutional, statutory, and common law authority to represent the public interest.

10.      California has a strong interest in maintaining robust CWA protections to control pollution to "waters of the United States" located within the state, including the Salt Ponds Site and the San Francisco Bay. The CWA regulates pollution from dredge and fill projects under the permitting requirements in Section 404. By improperly concluding that the Salt Ponds Site does not include "waters of the United States," the Jurisdictional Determination deprives these waters of CWA protections, including pollution control measures implemented through Section 404 permits.

11.      Because the Jurisdictional Determination effectively exempts the Site from the requirement to obtain a Section 404 permit, it also deprives California of the ability to conduct review of dredge and fill activities at the Site under the state certification requirement in Section 401, 33 U.S.C. § 1341. Section 401 authorizes a state to evaluate federally-permitted projects for compliance with state law requirements and impose conditions, as necessary, to ensure the projects meet these requirements.

12.      In California, restoration of wetlands and marshes can provide valuable habitat for protected wildlife species, improve water quality, and provide access for public recreation. As recognized by the State of California's Comprehensive Wetlands Policy, wetlands have important functions but have been nearly decimated in the late 19th and early 20th century. *Governor*

*Executive Order W-59-93* at 1 (August 23, 1993). For example, since the 1850s, approximately 40 percent of San Francisco Bay has been filled, and more than 90 percent of the original tidal wetlands have been converted to other uses. One of the primary objectives of the Comprehensive Wetlands Policy is "[t]o ensure no overall net loss and long-term net gain in the quantity, quality, and permanence of wetlands acreage and values in California." *Id.* The Jurisdictional Determination undermines California's interests in wetlands restoration because, by removing the requirement to obtain a Section 404 permit for dredge and fill activities, it makes urban development of the Salt Ponds Site more feasible and likely.

13.     California also has taken substantial actions to prevent and mitigate harms that climate change poses to human health and the environment, including impacts related to sea level rise that can cause severe damage to coastal beaches, tidal habitat, low-lying state or private properties, and infrastructure. *See Massachusetts v. EPA*, 549 U.S. 497, 521 (2007). Numerous federal and state agencies, including the State of California's San Francisco Bay Conservation and Development Commission and the National Oceanic and Atmospheric Administration, have concluded that maintaining the existing San Francisco Bay salt ponds or restoring them as tidal wetlands and marshes is an effective way to build resiliency against such impacts. The San Francisco Bay Conservation and Development Commission has specifically found that "[t]he water surface area of the salt ponds supplements the water surface area of the Bay and thus helps to moderate the Bay Area climate and to prevent smog" as well as "protect adjacent lowlying areas from tidal flooding." San Francisco Bay Plan, https://bcdc.ca.gov/plans/sfbay_plan#28 (last visited September 6, 2019). Restoration of salt ponds as tidal marshes and wetlands can "benefit Bay water quality" and protect San Francisco Bay from the devastating impacts of sea level rise. *Id.* The Jurisdictional Determination makes it more likely that the Salt Ponds Site will be developed, which will impair California's ability to control and mitigate sea level rise impacts in San Francisco Bay.

14.     Defendant Andrew R. Wheeler is sued in his official capacity as Administrator of EPA. Mr. Wheeler signed the Jurisdictional Determination at issue and bears responsibility, in

1   whole or in part, for the acts complained of in this Complaint. As EPA Administrator, Mr.

2   Wheeler directs EPA's implementation and enforcement of the CWA.

3       15.    Defendant EPA is the federal agency with primary regulatory authority under the

4   CWA, and bears responsibility, in whole or in part, for the acts complained of in this Complaint.

5                   **STATUTORY AND REGULATORY BACKGROUND**

6   **I.     THE CLEAN WATER ACT**

7       16.    The Act's core "objective … is to restore and maintain the chemical, physical, and

8   biological integrity of the Nation's waters." 33 U.S.C. § 1251(a).

9       17.    The central requirement of the Act is the prohibition on discharge of pollutants from

10  point sources into "navigable waters" without a permit. *Id.* §§ 1311(a), 1342, 1344, 1362(12).

11      18.    "Navigable waters" are defined as "the waters of the United States, including the

12  territorial seas." *Id*. § 1362(7). The CWA does not define "waters of the United States."

13      19.    Under the Act, the discharge of pollutants, such as dredge and fill materials, into

14  "navigable waters" or "waters of the United States" are prohibited unless they are in compliance

15  with the CWA's permit requirements. *See id.* § 1311(a).

16      20.    Permits for the discharge of dredge and fill materials into "waters of the United

17  States" are issued by the United States Army Corps of Engineers ("Army Corps") under Section

18  404 of the CWA, unless a state is authorized by EPA to operate this permit program for

19  discharges within its borders. 33 U.S.C. § 1344(a), (h). Permits for the discharge of other

20  pollutants are issued by EPA under Section 402 of the CWA, unless EPA authorizes a state to

21  operate this permit program for such discharges within its borders. 33 U.S.C. § 1342(a), (h).

22      21.    In California, Section 404 permits are issued by the Army Corps.

23      22.    States are authorized pursuant to Section 401 of the CWA to review projects

24  requiring federal permits, including Section 404 permits issued by the Army Corps, for

25  compliance with state law requirements. 33 U.S.C. § 1341. States can approve requests for

26  certification under Section 401, impose conditions to ensure projects meet state law requirements,

27  or deny certification requests. *Id.*

28

## II.   CWA JURISDICTION AND DEFINITION OF "WATERS OF THE UNITED STATES"

23.    CWA protections, implemented primarily through the Section 402 and 404 permits, only apply to waters that meet the definition of "waters of the United States."

24.    The Supreme Court has interpreted "waters of the United States" and "navigable waters" under the CWA broadly. "Navigable waters" are "waters that were or had been navigable in fact or which could reasonably be so made." *Solid Waste Agency of N. Cook Cty. v. U.S. Army Corps of Engineers*, 531 U.S. 159, 172 (2001). As the Court concluded in *Rapanos v. United States*, 547 U.S. 715 (2006) ("*Rapanos*"), "the meaning of 'navigable waters' in the Act is broader than the traditional understanding of that term." *Id.* at 731.

25.    In *Rapanos*, the Supreme Court interpreted "waters of the United States" in the context of a challenge by a property owner to the Army Corps' determination that he improperly filled wetlands without a permit. Justice Scalia, writing for a plurality of the Court, defined waters covered by the statute to include relatively permanent, standing or continuously flowing bodies of water connected to traditional navigable waters (*i.e.*, navigable-in-fact waters), as well as wetlands with a continuous surface connection to traditional navigable waters. 547 U.S. at 739. Justice Kennedy's concurring opinion set forth the "significant nexus" standard: if a wetland or water significantly affects the integrity of other waters "more readily understood as 'navigable'", it is protected by the Act. *Id.* at 780.

26.    Following *Rapanos*, lower federal courts have consistently applied Justice Kennedy's "significant nexus" test to determine CWA jurisdiction. *See United States v. Gerke*, 464 F.3d 723, 724 (7th Cir. 2006) (Justice Kennedy's "significant nexus" standard governs or suffices); *United States v. Robison*, 505 F.3d 1209, 1222 (11th Cir. 2007) (same); *N. Cal. River Watch v. City of Healdsburg*, 496 F.3d 993, 999–1000 (9th Cir. 2007) (same); *United States v. Johnson*, 467 F.3d 56 (1st Cir. 2006) (if either plurality or Justice Kennedy's test is met, there is a "water of the United States"); *United States v. Donovan*, 661 F.3d 174 (3d Cir. 2011) (same); *United States v. Bailey*, 571 F.3d 791 (8th Cir. 2009) (same).

27.    EPA and the Army Corps have defined "waters of the United States" through regulation. In 1977, the Army Corps issued regulations defining "waters of the United States." 42

Fed. Reg. 37,144 (July 19, 1977). EPA promulgated a revised definition in 1980, 45 Fed. Reg. 85,336, 85,346 (Dec. 24, 1980), and the Army Corps promulgated the very same definition in 1982, 47 Fed. Reg. 31,794 (July 22, 1982). These EPA and Army Corps regulations defining "waters of the United States" are collectively referred to in this Complaint as the "1980s regulations."

28.     In 2015, EPA and the Army Corps promulgated the Clean Water Rule, which defined "waters of the United States" under the CWA based on "the text of the statute, Supreme Court decisions, the best available peer-reviewed science, public input, and the agencies' technical expertise and experience." 80 Fed. Reg. at 37,055. The Clean Water Rule became effective on August 28, 2015. *Id.* at 37,054.

29.     The Clean Water Rule identifies categories of waters within the CWA's jurisdiction as well as waters that are excluded from the CWA's purview. 80 Fed. Reg. at 37,056. The Clean Water Rule codified the "significant nexus" standard, consistent with Justice Kennedy's concurrence in *Rapanos*. The Clean Water Rule protected "adjacent waters," including those found within 100 feet of certain other covered waters or within specified portions of 100-year floodplains.

30.     States, trade associations, environmental organizations and others challenged the Clean Water Rule in several federal district and circuit courts. The Clean Water Rule was stayed in 13 states by the United States District Court of North Dakota in August 2015 and was subsequently stayed nationwide by the Sixth Circuit. *Ohio v. United States Army Corps of Eng'rs* (*In re EPA & DOD Final Rule*), 803 F.3d 804 (6th Cir. 2015). The nationwide stay was partially lifted in February 2018.  When the Jurisdictional Determination was issued, the Clean Water Rule was effect in 22 states, including California.

31.     On September 12, 2019, EPA issued a prepublication notice of a final rule that will rescind the Clean Water Rule and reinstate the prior regulatory definition of "waters of the United States."

32.     Impoundments of "waters of the United States" are "waters of the United States" under the Clean Water Rule and the 1980s regulations.

8

33.    "Fast land" is an area that was previously covered by water but has been converted to solid dry upland through man-made artificial means, such as filling the area and/or constructing dikes or levees. An area converted to "fast land" prior to the enactment of the CWA is excluded from the Act's jurisdiction if the area does not continue to be regularly inundated with water and cannot be returned to its natural state as water with the removal of the man-made artificial obstructions. *See Leslie Salt Co. v. Froehlke,* 578 F.2d 742 (9th Cir. 1978); *U.S. v. Milner*, 583 F.3d 1174 (9th Cir. 2009).

### III.    EPA AND ARMY CORPS' JURISDICTIONAL DETERMINATIONS UNDER THE CWA

34.    EPA is responsible for implementing the CWA, and has the final authority to make determinations on CWA jurisdiction. The Army Corps has authority to implement the Section 404 permitting program, including making determinations of CWA jurisdiction for purposes of Section 404 permitting.

35.    Under the Army Corps regulations, a jurisdictional determination is a "written [Army] Corps determination that a wetland and/or waterbody is subject to regulatory jurisdiction under Section 404 of the Clean Water Act." 40 C.F.R. § 331.2.

36.    The Army Corps issues both "preliminary" and final jurisdictional determinations. Preliminary jurisdictional determinations "are written indications that there may be waters of the United States in a parcel or indications of the approximate location(s) of waters of the United States on a parcel." *Id.* "Approved" or final jurisdictional determinations are documents "stating the presence or absence of waters of the United States on a parcel or a written statement and map identifying the limits of waters of the United States on a parcel." *Id.*

37.    A jurisdictional determination can be issued upon request by an affected party, such as a property owner, or as part of the Section 404 permitting process. *See U.S. Army Corps of Engineers v. Hawkes Co., Inc.*, 136 S. Ct. 1807 (2016) ("*Hawkes*").

38.    Pursuant to the "Memorandum of Agreement between the Department of Army and the Environmental Protection Agency Concerning the Determination of the Geographic Jurisdiction of the Section 404 Program and the Application of the Exemptions under Section 404(f) of the Clean Water Act," signed on January 19, 1989 (hereinafter, "1989 MOA"), EPA can

9

1   make a jurisdictional determination in "special cases."  A "special case" is "a circumstance where

2   EPA makes the final determination of the geographic jurisdictional scope of waters of the United

3   States for purposes of section 404." 1989 MOA at 2.

4       39.   Final determinations made under the 1989 MOA, including "special case"

5   jurisdictional determinations by the EPA, are binding on the federal government and "represent

6   the Government's position in any subsequent Federal action or litigation concerning that final

7   determination." *Id.* at 5.

8       40.   A jurisdictional determination for Section 404 purposes is a final agency action

9   subject to judicial review. *Hawkes*, 136 S. Ct. at 1814-16.

10  **IV.   ADMINISTRATIVE PROCEDURE ACT**

11      41.   The APA governs the procedural requirements for agency decision-making, including

12  jurisdictional determinations made pursuant to Section 404 of the CWA. Under the APA, a

13  "reviewing court shall … hold unlawful and set aside agency actions, findings, and conclusions,

14  found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law"

15  or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

16      42.   An agency action is arbitrary and capricious under the APA where the agency "has

17  relied on factors which Congress has not intended it to consider, entirely failed to consider an

18  important aspect of the problem, offered an explanation for its decision that runs counter to the

19  evidence before the agency, or is so implausible that it could not be ascribed to a difference of

20  view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

21  *Mutual Automobile Ins. Co.*, 463 U.S. 29, 43 (1983) ("*State Farm*").

22      43.   An agency decision is supported by "substantial evidence" where the agency has

23  relied on "such relevant evidence as a reasonable mind might accept as adequate to support a

24  conclusion." *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 601 (9th Cir.

25  2014).

26      44.   A court reviewing a final agency action under the APA must conduct a "searching

27  and careful" review of the record to determine whether an agency's decision is "based on a

28

10

consideration of the relevant factors and whether there has been a clear error of judgment."

*Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 401, 416 (1971).

**FACTUAL BACKGROUND**

**I.  THE SALT PONDS SITE**

45.     The Salt Ponds Site consists of approximately 1,365 contiguous acres adjacent to Westpoint Slough, a part of San Francisco Bay, located near Seaport Boulevard, Redwood City, San Mateo County, California. The Site is bordered by navigable tributaries to the San Francisco Bay, including Westpoint Slough, First Slough, Redwood Creek, and Flood Slough.

46.     The Site is owned by Cargill Point, LLC, an affiliate of Cargill, Inc.

47.     The Site consists of a series of connected salt ponds, earthen dikes, and levees that were constructed in the early to mid-1900s by impounding tidal marshes of San Francisco Bay and tidal sloughs that are tributaries to San Francisco Bay.

48.     Prior to the construction of the levees, the Salt Ponds Site was marshland subject to inundation during periods of high tide, with an extensive and dense network of tidal sloughs subject to regular tidal action. At all times relevant, all of the ponds at the Site have remained below the high tide line and all of the ponds bottoms are below the mean high water mark of San Francisco Bay today.

49.     The Site remains hydrologically connected with the waters of San Francisco Bay at all times relevant, including: (1) during the operation of the salt ponds system as water pumped from San Francisco Bay flows into the salt ponds where it is subjected to evaporation and concentration and (2) during the repair and maintenance of the levee system which is conducted by a large dredge barge that enters the salt ponds from the Bay and navigates between the salt ponds and the Bay.

50.     The Salt Ponds Site is bordered by the Ravenswood Pond Complex of the South Bay Salt Pond Restoration Project, which seeks to restore thousands of acres of industrial salt ponds in the area to tidal wetlands. Also directly surrounding the Site are federal and state ecological preserves and other protected lands, including the Ravenswood Open Space Preserve and the Palo

Alto Baylands Preserve, as well as the U.S. Fish and Wildlife Service Don Edwards National Wildlife Refuge.

51.    The Salt Ponds Site was identified by the U.S. Fish and Wildlife Service as a proposed addition to the Don Edwards National Wildlife Refuge to be acquired by the Service because of the Site's significant conservation value as an existing and future habitat for wildlife in the South San Francisco Bay.

**II.    SAN FRANCISCO BAY**

52.    San Francisco Bay is home to the largest estuary on the west coast of the United States where fresh waters from the Sacramento and San Joaquin rivers flow into the Pacific Ocean. The Bay is surrounded by one of the country's largest metropolitan regions, including the cities of San Francisco, Oakland, San Jose, and many others.

53.    San Francisco Bay supports an extraordinary diverse and productive ecosystem of fresh and saline waters represented by deepwater channels, tidelands, marshlands, freshwater streams, and rivers. This ecosystem provides a wide variety of habitats that are vital to the survival of several plant and animal species and sustains rich communities of fish, birds, and other aquatic life.

54.    Important characteristics of San Francisco Bay are the wetlands and water marshes along the Bay's margins. These areas are recognized as vital components of the Bay system's ecology. Most marshes around the Bay have been destroyed through filling and development.

55.    Wetlands and marshes provide critical habitats for hundreds of species, offer open space, and provide recreational opportunities. They also serve to enhance water quality through flood control, erosion control, stream bank stabilization, and filtration and purification of surface waters.

56.    Current efforts by multiple agencies recognize the importance of restoring wetland functions in San Francisco Bay to protect and enhance its beneficial uses. Large-scale restoration of salt ponds and other former wetlands are among the steps proposed and implemented by agencies to achieve this goal. Major salt ponds restoration efforts include the Eden Landing Pond Complex, the Aviso Pond Complex, and the Ravenswood Pond Complex, which are part of the

South Bay Salt Pond Restoration Project managed by the U.S. Fish and Wildlife Service, the California Department of Fish and Wildlife, the California Coastal Conservancy, the Army Corps, and local agencies.

57.     San Francisco Bay is on the list of impaired waters that fail to meet water quality standards pursuant Section 303 of the CWA for bacteria and PCBs.

III.     JURISDICTIONAL DETERMINATIONS FOR THE SALT PONDS SITE

58.     On November 12, 2009, DMB Redwood City Saltworks[2] ("Saltworks") submitted to the San Francisco District of the Army Corps a request for preliminary jurisdictional determination for the Salt Ponds Site under and Section 404 of the CWA. *EPA Redwood City Salt Plant Jurisdictional Determination* (March 1, 2019), at 1. The request was made in conjunction with Saltworks' permit application, filed with Redwood City, for a proposed urban development and tidal marsh restoration project on the Site.

59.     On April 14, 2010, the Army Corps issued a preliminary jurisdictional determination, stating the Site contained wetlands and other waters that may be subject to jurisdiction under CWA and the Rivers and Harbors Act.

60.     On May 4, 2012, Saltworks withdrew its permit application with Redwood City. On May 30, 2012, Saltworks submitted a request for final jurisdictional determination and asked that the final jurisdictional determination be made by EPA under the 1989 MOA.

61.     On May 14, 2014, EPA Region 9 requested from EPA's Office of Water permission to designate the jurisdictional determination for the Site as a "special case" under the 1989 MOA.

62.     On March 18, 2015, EPA designated the jurisdictional determination for the Salt Ponds Site as a "special case."

63.     EPA Region 9 issued its Preliminary Determination for the Salt Ponds Site on November 21, 2016. EPA Region 9 Draft Redwood City Salt Ponds JD (Nov. 21, 2016). The Preliminary Determination concluded that the approximately 1,270 acres of the Site are "waters of the United States" under the CWA, "because (1) the tidal channels within the Redwood City

---

[2] DMB Redwood City Saltworks is a venture of DMB Pacific Ventures, LLC, and Westpoint Slough, LLC, which is an affiliate of Cargill, Inc.

Salt Ponds were part of the traditionally navigable waters of San Francisco Bay, and were not converted to fast land prior to enactment of the CWA; (2) the salt ponds in their current condition have been shown to be navigable in fact, and are susceptible to use in interstate and foreign commerce with reasonable improvements; (3) the salt ponds are impoundments of waters otherwise defined as "waters of the United States"; and (4) the salt ponds have a significant nexus to the traditionally navigable waters of the adjacent San Francisco Bay."

64.     The Preliminary Determination relied on extensive legal analysis of the CWA, Army Corps and EPA's 1980s regulations interpreting "waters of the United States,"[3] Army Corps' regulations defining the lateral extent of CWA jurisdiction over waters, as well as relevant case law, agency guidance, and past agency practices.

65.     The Preliminary Determination was based on a comprehensive factual analysis, including evaluation of: (1) the history of the Salt Ponds Site; (2) the nature of the salt ponds and the salinity of their waters; (3) evidence of past and current navigation at the Site, as well as susceptibility to future navigation; (4) tidal ebb and flow at the Site; (5) evidence of adjacent wetlands; (6) evidence of impoundments of "waters of the United States" at the Site; and (7) significant nexus to the physical, chemical, and biological integrity of San Francisco Bay, the nearest "water of the United States."

66.     In the Preliminary Determination, EPA specifically rejected the argument that the Salt Ponds Site was "fast land" and therefore not "water" for CWA jurisdictional purposes because it had been cut off from San Francisco Bay by levees. *Id.* at 16. EPA concluded that the Site was not "fast land" because it had not been filled or dewatered, the ponds bottoms were at or below their ordinary high water marks[4] as well as the mean high water mark for San Francisco Bay, and the Site continued to be regularly inundated by waters of the San Francisco Bay. *Id.* at 20-21.

---

[3] As discussed in Paragraph 30 above, the Clean Water Rule had been stayed nationwide by the Sixth Circuit in October 2015 and EPA did not rely on it for the Preliminary Determination.
[4] "Ordinary high water mark" is defined by the Army Corps' regulations as "that line on the shore established by the fluctuations of water and indicated by physical characteristics such as a clear, natural line impressed on the bank, shelving, changes in the character of soil, destruction of terrestrial vegetation, the presence of litter and debris, or other appropriate means that consider the characteristics of the surrounding areas." 33 C.F.R. § 328.3(c)(6).

67.     The Preliminary Determination also rejected arguments that the levels of salinity of the waters at the Site or the fact that the ponds were configured and used for the production of salt had "converted the ponded areas from 'waters' into something else." EPA concluded that, despite these characteristics, the Salt Ponds Site included "waters of the United States." *Id.* at 18-21.

68.     A final jurisdictional determination for the Salt Ponds Site was not issued before the change in federal administration in January 2017.

69.     On March 1, 2019, EPA issued the final Jurisdictional Determination for the Salt Ponds Site, which reversed the Preliminary Determination, and concluded that the entire 1,365-acre Salt Ponds Site does not include "waters of the United States" for purposes of the CWA. The Jurisdictional Determination concluded that "the site was transformed into fast land before passage of the CWA and has not subsequently been overtaken by jurisdictional waters." EPA Redwood City Salt Plant Jurisdictional Determination at 1.

70.     The Jurisdictional Determination ignored the factual evidence and legal conclusions of the Preliminary Determination and failed to provide a reasoned explanation why EPA's conclusion in the Jurisdictional Determination reverses the agency's conclusion in the Preliminary Determination.

71.     The Jurisdictional Determination failed to evaluate the relevant evidence pertaining to the Salt Ponds Site, including, but not limited to, the fact that the Site was never filled or dry, but has always been inundated with San Francisco Bay waters, and that the Site continued to be connected to the Bay as part of the regular operation of the salt ponds.

72.     In addition, the Jurisdictional Determination misapplied and misinterpreted the CWA, applicable regulations, and case law and is not in accordance with law.

73.     Because it erroneously concluded that the Salt Ponds Site did not contain "waters," EPA did not analyze the Site pursuant to the requirements of the CWA, the Clean Water Rule, and applicable case law to determine if waters present at the Site fall within the definition of "waters of the United States."

**FIRST CAUSE OF ACTION**

**(Violation of the APA, 5 U.S.C. § 706(2)(A), (E):  Arbitrary and Capricious, Abuse of Discretion, Not in Accordance with Law, Unsupported by Substantial Evidence)**

74.    Paragraphs 1 through 73 are realleged and incorporated herein by reference.

75.    A "reviewing court shall … hold unlawful and set aside" agency action found to be "arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A), (E).

76.    An agency action is arbitrary and capricious under the APA where the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference of view or the product of agency expertise." *State Farm*, 463 U.S. at 43.

77.    An agency decision is supported by "substantial evidence" where the agency has relied on "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *San Luis & Delta-Mendota Water Authority v. Jewell*, 747 F.3d 581, 601 (9th Cir. 2014).

78.    The Jurisdictional Determination is contrary to law because it misapplied the CWA, implementing regulations, and applicable caselaw to reach the unsupported conclusion that the Salt Ponds Site is "fast land" and therefore not "water" for CWA purposes.

79.    EPA does not provide a reasoned explanation in the Jurisdictional Determination for its conclusion that the Site does not include "waters" for CWA purposes. EPA improperly focuses on the industrial character of the Site and ignores the evidence that the Salt Ponds Site was never filled and converted to solid dry land and remains inundated by and connected with San Francisco Bay waters. Further, the Jurisdictional Determination ignored or failed to evaluate the facts and evidence demonstrating that the Salt Ponds Site contains "waters of the United States," including but not limited to, evidence that the Site: (1) was part of the traditionally navigable waters of the San Francisco Bay; (2) contains areas that are themselves navigable and are susceptible to use in interstate and foreign commerce with reasonable improvements; (3) is an impoundment of the

16

Bay, which itself is a "water of the United States"; (4) the Site has "significant nexus" to the traditionally navigable waters of San Francisco Bay. Moreover, the Jurisdictional Determination lacks rational basis and is implausible because it is contradicted by the evidence.

80.     Further, the Jurisdictional Determination is not supported by the substantial evidence on the record; the evidence in the record demonstrates that the Site includes "waters of the United States."

81.     Because EPA erroneously concluded that the Salt Ponds Site is "fast land," the agency failed to conduct the CWA jurisdictional analysis to determine if the waters present at the Site meet the definition of "waters of the United States" for Section 404 purposes.

82.     Accordingly, EPA acted in a manner that was arbitrary and capricious, an abuse of discretion, not in accordance with law, in violation of the APA. 5 U.S.C. § 706(2)(A). In addition, the Jurisdictional Determination violated the APA because it is unsupported by substantial evidence. *Id.*, § 706(2)(E). Consequently, the Jurisdictional Determination should be held unlawful and set aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

1.     Issue a declaratory judgment that in issuing the Jurisdictional Determination, EPA acted arbitrarily, capriciously, contrary to law, abused its discretion, and made a decision that is unsupported by substantial evidence, in violation of the APA;

2.     Issue an order vacating and setting aside EPA's Jurisdictional Determination;

3.     Award Plaintiff its costs, expenses, and reasonable attorneys' fees; and

4.     Award such other relief as the Court deems just and proper.

1  Dated:  September 24, 2019                    Respectfully submitted,

2                                                XAVIER BECERRA
                                                 Attorney General of California
3                                                SARAH E. MORRISON
                                                 Supervising Deputy Attorney General
4                                                GEORGE TORGUN
                                                 Deputy Attorney General
5
6                                                /s/ Tatiana K. Gaur
                                                 TATIANA K. GAUR
7                                                Deputy Attorney General
                                                 *Attorneys for Plaintiff State of California*
8  LA2019101287
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF