UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER; SAVE THE BAY; COMMITTEE FOR GREEN FOOTHILLS; CITIZENS' COMMITTEE TO COMPLETE THE REFUGE; and STATE OF CALIFORNIA, by and through XAVIER BECERRA, ATTORNEY GENERAL,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. ENVIRONMENTAL PROTECTION AGENCY AND ITS ADMINISTRATOR,<br><br>Defendants.<br><br>REDWOOD CITY PLANT SITE, LLC,<br><br>Intervenor-Defendant. | No. C 19-05941 WHA (lead case)<br><br>Consolidated With<br><br>No. C 19-05943 WHA<br><br>**ORDER CONSOLIDATING CASES, GRANTING MOTIONS TO INTERVENE, AND VACATING HEARINGS** |

**INTRODUCTION**

In these related challenges to a federal agency determination, the parties stipulate to consolidation and the original requestor of the agency determination moves to intervene. Intervention is unopposed. For the reasons below, the actions are **CONSOLIDATED** and the motions to intervene are **GRANTED**.

**STATEMENT**

In March 2019, the United States Environmental Protection Agency issued a final determination on the jurisdictional status of waters under the Clean Water Act within an area known as the Redwood City Salt Ponds, adjacent to the San Francisco bay's Westpoint Slough. The jurisdictional determination found that the contested area did not include "waters of the United States" under the CWA and thus was not entitled to the CWA's protections. The EPA's conclusion was directly at odds, however, with a draft prepared by its San Francisco-based Region 9 division in November 2016. Region 9's draft found that most of the contested area constituted "waters of the United States" for purposes of CWA jurisdiction.

The question of what weight the EPA owed the Region 9 draft lies at the center of these two related actions challenging the EPA's March 2019 determination. Both actions were filed on September 24, 2019, one by a group of nonprofit environmental organizations (*Baykeeper*), and the other by the State of California (*California*). Each complaint asks that the March 2019 determination be set aside and declared unlawful, arbitrary and capricious, an abuse of discretion, unsupported by substantial evidence, and in violation of the Administrative Procedure Act (Compl. *California* ¶ 5; Compl. *Baykeeper* ¶ 13).

As told by both complaints, the journey to the March 2019 determination began ten years ago with a request for a preliminary jurisdictional determination by our proposed intervenor, Redwood City Plant Site, LLC, also known as DMB Redwood City Saltworks. A different entity, DMB Redwood City Holdings LLC, and an affiliate of Cargill, Incorporated, formed Saltworks in 2006 as a joint venture to explore future uses of the salt pond site.

The current use of the site for commercial salt production, however, dates to the early twentieth century when the salt ponds were constructed as part of a larger development of commercial salt production facilities along the San Francisco bay and its tributaries. Once established, the site consisted of an approximately 1,400-acre salt complex east of Redwood Creek, surrounded by a levee system separating the site from natural tidal influences of the bay. Cargill and its affiliates have owned the property since 1978 (Compl. *Baykeeper* ¶ 66).

1  In 2009, the Saltworks venture proposed converting the site to a mixed-use, high-density development and partial tidal-restoration project. In conjunction with a permit application it filed with Redwood City, Saltworks requested that the Army Corps of Engineers prepare a non-binding, preliminary determination under the CWA for the area (Decl. Kane ¶ 18).

In 2010, the Corps issued the requested determination finding that wetlands and other waters on the site may be jurisdictional under the CWA. Facing public opposition to the development and uncertainty regarding CWA jurisdiction, Saltworks withdrew its Redwood City permit application in 2012 (Compl. *Baykeeper* ¶ 87).

A month later, however, Saltworks requested a binding jurisdictional determination for the site from both the Corps and the EPA. Initially, the EPA decided to provide only guidance to the Corps. But, when the Corps told the EPA three years later that it would find the waters were non-jurisdictional, the EPA intervened, reserving the final determination for itself.

In November 2016, EPA Region 9 completed its draft decision finding that most of the waters fell within the jurisdiction of the CWA. EPA headquarters did not finalize Region 9's draft and Saltworks' pending request remained open until March 2019, when the EPA issued its final determination going the other way. The *Baykeeper* and *California* actions ensued.

Prior to the initial case management conference, Saltworks moved to intervene in both actions. Although California and the *Baykeeper* plaintiffs would not stipulate to Saltworks' intervention prior to Saltworks' motions, both eventually filed statements of non-opposition.

## ANALYSIS

### 1. STIPULATION TO CONSOLIDATE CASES

Under Rule 42(a), a district court may consolidate actions if they involve a common question of law or fact. "The district court, in exercising its broad discretion to order consolidation of actions presenting a common issue of law or fact under Rule 42(a), weighs the saving of time and effort consolidation would produce against any inconvenience, delay, or expense that it would cause." *Huene v. United States*, 743 F.2d 703, 704 (9th Cir. 1984).

Here, the *California* and *Baykeeper* actions involve the same defendants along with common questions of law and fact. No parties object to consolidation. Both actions concern

3

the same CWA jurisdictional determination, seek the same remedy, and will be reviewed based on the same administrative record. Thus, this order finds that the efficiency benefits of consolidation outweigh any inconvenience, delay, or prejudice any party would suffer.

### 2. MOTIONS TO INTERVENE

Intervention as of right is governed by Rule 24(a), which provides that on timely motion, a court must permit anyone to intervene in an action who:

> . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Thus, a movant seeking to intervene as of right in a pending lawsuit must satisfy four requirements. The movant must show that:

> (1) it has a significant protectable interest relating to the property or transaction that is the subject of the action; (2) the disposition of the action may, as a practical matter, impair or impede the [movant's] ability to protect its interest; (3) the [movant] is timely; and (4) the existing parties may not adequately represent the [movant's] interest.

*United States v. Los Angeles*, 288 F.3d 391, 397 (9th Cir. 2002) (citation omitted). Rule 24(a) is underscored by a "liberal policy in favor of intervention." *Ibid.*

Saltworks satisfies each of Rule 24(a)'s four requirements and no parties oppose its intervention. *First*, Saltworks demonstrates a significant protectable interest in this action. The interest requirement's purpose is to involve "as many apparently concerned persons as is compatible with efficiency and due process." *Portland Audubon Society v. Hodel*, 866 F.2d 302, 308 (9th Cir. 1989). Saltworks initiated the jurisdictional determination process and the extent of such jurisdiction over the salt ponds is relevant to its purpose of exploring future development options. And, to the extent Saltworks represents Cargill's interests, Cargill maintains ownership interests in the salt ponds that will be directly affected by a decision in this litigation (Decl. Kane ¶ 16). While the interests of a joint venture's member's affiliate may be too attenuated to stand in for the joint venture's interest elsewhere; here, Saltworks'

4

representation of Cargill's interests will benefit the efficient resolution of this dispute. *Portland Audubon Society*, 866 F.2d at 308.

*Second*, Saltworks' interests may be impaired or impeded by the disposition of this litigation. Our court of appeals "follows the guidance of the Rule 24 advisory committee notes that state that '[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001). As stated above, a decision in this litigation will affect Saltworks significant protectable interests.

*Third*, Saltworks' motion is timely. In evaluating the timeliness of a motion to intervene, we consider "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). Saltworks sought stipulations to intervene well before the initial case management conference and no parties object to its intervention.

*Fourth*, the current parties do not adequately represent Saltworks' interests. Our court of appeals requires only a "minimal" showing to establish inadequacy. *Sw. Ctr. for Biological Diversity*, 268 F.3d at 823. While the government is defending the March 2019 jurisdictional determination, the broad balance of environmental, administrative, public, and other interests the government must consider in responding to the claims differ markedly from Saltworks' specific interests in protecting its property rights and investments.

Saltworks has satisfied the elements set forth in Rule 24(a). This order need not engage in a permissive intervention analysis under Rule 24(b).

## CONCLUSION

For the reasons stated above, the *California* and *Baykeeper* actions are **CONSOLIDATED** and Saltworks' motions to intervene are **GRANTED**. Going forward, all filings shall be made using the caption used for this order and shall be filed only in Case No. 19-05941. This order shall be the final filing in Case No. 19-05943. The January 29 hearing on the motions to intervene in both actions are **VACATED**.

**IT IS SO ORDERED.**

Dated: January 15, 2020.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE